IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| LUTHERAN CHURCH-MISSOURI SYNOD, and INTERNATIONAL LUTHERAN LAYMEN'S LEAGUE a/k/a LUTHERAN HOUR MINISTRIES,<br><br>Plaintiffs,<br><br>vs.<br><br>TIMOTHY A. KRUEGER; TAMARA KRUEGER; KRUEGER CATTLE COMPANY, INC.; WM. O. KRUEGER, INC.; WILLIAM O. KRUEGER; MARY LOU CAROLLO; DENNIS P. KRUEGER; KERRY KRUEGER; and WILLIAM C. KRUEGER,<br><br>Defendants. | Case No. _____<br><br><br><br>**COMPLAINT**<br>**JURY TRIAL DEMANDED** |

Plaintiffs, Lutheran Church-Missouri Synod ("LCMS") and International Lutheran Laymen's League a/k/a Lutheran Hour Ministries ("LHM") (jointly "Plaintiffs") for their Complaint against Defendants Timothy A. Krueger, Tamara Krueger, Krueger Cattle Company, Inc., Wm. O. Krueger, Inc., William O. Krueger, Mary Lou Carollo, Dennis P. Krueger, Kerry Krueger, and William C. Krueger (jointly "Defendants"), state as follows:

### INTRODUCTION

Plaintiffs, the largest and oldest Lutheran congregation in the Midwest and its auxiliary outreach arm, are minority shareholders in Wm. O. Krueger, Inc., a privately-held Colorado corporation based in Nebraska, by virtue of a testamentary gift made by Glenda Krueger, the wife of the company's founder. Since Plaintiffs first learned of Glenda's bequest, they have tried in vain to obtain access to company books and records, and information concerning various stock and property transactions. Initially, Plaintiffs were merely interested in obtaining information sufficient to value

their stock gift for a potential buyout by other shareholders of the company, as Plaintiffs generally prefer to liquidate bequests of stock in closely-held companies, rather than become involved in managing such interests. However, based on the limited information that Plaintiffs have been able to obtain, it has become clear to them that Glenda's son, Timothy A. Krueger, is determined to frustrate his mother's wishes for his own personal advantage. Tim Krueger has had control of the company since at least 2008, and has mismanaged the company to the detriment of Plaintiffs and other shareholders, including by self-dealing and the misapplication and waste of company property and assets, in violation of company bylaws and his fiduciary duties of loyalty and care. Plaintiffs bring this suit and seek legal, declaratory and injunctive relief, including the removal of Tim Krueger as an officer and director, and if necessary, the involuntary dissolution of the Company. Without the intervention of this Court, Tim Krueger may succeed in debasing his mother's bequests to Plaintiffs to a value of pennies on the dollar.

## PARTIES, JURISDICTION AND VENUE

1. Plaintiff LCMS is a nonprofit corporation organized and existing pursuant to Missouri law, with its principal place of business located in St. Louis County, Missouri. LCMS is the largest and oldest Lutheran denomination in the Midwest.

2. Plaintiff LHM is a nonprofit corporation organized and existing pursuant to Missouri law, with its principal place of business located in St. Louis County, Missouri. LHM is an official auxiliary ministry arm of LCMS.

3. Defendant Wm. O. Krueger, Inc. (the "Company") is a corporation organized and existing pursuant to Colorado law with its principal place of business in Nebraska.

4. Defendant Timothy A. Krueger ("Tim Krueger") is an individual resident of the State of Nebraska, and is a shareholder, director and officer of the Company.

5. Defendant Tamara Krueger ("Tammy Krueger") is an individual resident of the State of Nebraska.

6. Defendant Kerry Krueger is an individual resident of the State of Nebraska.

7. Defendant Mary Lou Carollo is an individual resident of the State of Colorado.

8. Defendant William O. Krueger is an individual resident of the State of Nebraska.

9. Defendant Dennis Krueger is an individual resident of the State of Nebraska.

10. Defendant William C. Krueger is an individual resident of the State of Nebraska.

11. This Court has jurisdiction over the subject of this matter pursuant to 28 U.S.C. § 1332, because there is complete diversity of citizenship and the total amount in controversy exceeds $75,000, exclusive of costs and interest.

12. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 107 because several defendants reside in this District, a substantial part of the events or omissions giving rise to the claims occurred in this District, and a substantial part of the property that is the subject of this action is situated in this District.

13. This action is not a collusive one to confer jurisdiction that the Court would otherwise lack.

## FACTS COMMON TO ALL COUNTS

14. The Company was incorporated in Colorado in September 1973.

15. In October 1974, the Company moved its principal place of business to Nebraska.

16. The original shareholders of the Company were William O. Krueger, and his wife Glenda Krueger.

17. The Kruegers' children, Tim, Mary, William C., Dennis and Kerry all became shareholders in the Company.

18. By March 2008, the Kruegers' son, Tim Krueger, was President of the Company and effectively controlled the Company in its day-to-day affairs and governance.

19. As of March 10, 2008, there were 12,067 outstanding shares of Company stock, owned as follows:

    a. William O. Krueger, 1,798 shares (14.9%)

    b. Glenda Krueger; 1,520 shares (12.6%)

    c. Mary Carollo; 1,062 shares (8.8%)

    d. Dennis Krueger; 531 shares (4.4%)

    e. Tim Krueger; 4,115 shares (34.1%)

    f. Kerry Krueger; 2,269 shares (18.8%)

    g. William C. Krueger; 772 shares (6.4%).

20. Family relations among the Kruegers had become very strained by March 2008. Around that time, Tim Krueger attempted to negotiate the buyout of his parents' stock, for a total of $1 million – approximately $300 per share. A handwritten agreement to that effect was prepared and at least partially executed, but for reasons unknown to Plaintiffs at this time, that buyout never occurred. However, from that time on, although William O. and Glenda remained shareholders, they were excluded by their son, Tim Krueger, from participation in governance of the Company, and were denied access and information regarding the Company's affairs.

21. In her Last Will and Testament, made on January 20, 2012, Glenda Krueger bequeathed all of her stock in the Company to Plaintiffs.

22. Glenda Krueger passed away on September 23, 2012.

23. Upon Glenda Krueger's death, Plaintiffs became the beneficial owners of the stock by operation of law.

SL 1631999.1

24. On November 30, 2012, Tim Krueger caused the Company to sell a parcel of property consisting of approximately 120 acres with improvements including residential and rental properties, which net the Company no proceeds. On information and belief, Tim Krueger caused the Company's property to be bundled with other property owned by him separately, all sold together in a series of transactions, and Tim Krueger secretly profited from this series of transactions at the expense of the Company.

25. In December 2012, Tim Krueger, together with Tammy Krueger and their company Krueger Cattle, entered into an agreement with his father, William O. Krueger, to purchase all of William O. Krueger's stock in the Company, at a price of $120 per share, a total value of $215,760.

26. The Bylaws of the Company, a copy of which is attached and incorporated herein as Exhibit 1, set forth the rights and obligations of the Company and shareholders pertaining to the sale or transfer of Company stock.

27. Before any sale of stock of the Company, the Bylaws require notice and a special meeting of the shareholders, and provide the other shareholders with 180-day rights of first refusal as to any such sale. *See* Ex. 1, at Article V, Section 6.

28. The purchase by Tim Krueger of all of William O. Krueger's stock in the Company was done without calling a special meeting of the voting shareholders, without affording Plaintiffs or any other shareholder with their rights of first refusal, or otherwise complying with the requirements of Article V of the Bylaws.

29. In February 2013, Tim Krueger, on his own action, without calling a meeting to obtain approval of either the Board of Directors or shareholders, caused the Company to sell all of its livestock to his separate company Krueger Cattle Company ("Krueger Cattle"), on terms not fully disclosed to Plaintiffs.

30. From the limited information available to Plaintiffs, it appears that the Company's cattle, with a book value of over $300,000, were transferred to Krueger Cattle in exchange for a promissory note for $170,000.

31. Further, from the limited information available to Plaintiffs, it appears that Tim Krueger transferred the Company's inventory of grain, feed, seed and supplies to Krueger Cattle without value received.

32. Tim Krueger also caused the Company to enter into questionable lease agreements for Krueger Cattle to have use of Company land without fair compensation to the Company.

33. In April 2013, Tim Krueger offered to purchase Glenda's stock from Plaintiffs for a price of $19 per share.

34. On or about June 7, 2013, by a letter on Plaintiff's letterhead, displaying their address in St. Louis, Missouri, Plaintiffs requested that Tim Krueger provide information to which Plaintiffs would be entitled as shareholders, including Company financial statements and governing documents, to evaluate the offer to purchase the stock.

35. Tim Krueger did not respond to that request, nor did any other director or officer of the Company.

36. On or about October 10, 2013, Plaintiffs reiterated their previous request for information about the Company, and stated that the $19 per share offer could not be accepted without such information. Again, Plaintiffs communicated by letter on letterhead containing Plaintiff's address.

37. Again, neither Tim Krueger nor any other officer or director of the Company responded to the October 10, 2013 request for information.

38. However, after the requests for information, Tim Krueger withdrew his offer to purchase Plaintiffs' shares at $19 per share.

39. On or about October 15, 2013, Tim Krueger caused the Company to redeem all of the stock owned by Kerry Krueger, purportedly for cancellation of indebtedness of Kerry Krueger to the Company.

40. The purported repurchase or redemption of Kerry Krueger's stock in the Company was done without complying with the requirements of the Bylaws.

41. On or about November 19, 2013, some shareholders of the Company, including Tim Krueger, Mary Lou Carollo, Dennis Krueger, Kerry Krueger and William C. Krueger, but excluding Plaintiffs, met and purported to conduct the Company's Annual Shareholder Meeting.

42. Defendants did not provide Plaintiffs with any notice of the November 19, 2013 purported shareholder meeting.

43. The minutes for the November 19, 2013 Company meeting inaccurately indicate that Plaintiffs had "rejected" Tim Krueger's offer to purchase their shares, and falsely state that the Company did not have addresses for Plaintiffs and thus could not send Plaintiffs their stock certificates.

44. The minutes for the November 19, 2013 purported shareholder meeting also reflect that Tim Krueger "submitted" two "agreements" to the shareholders:

    a. The December 10, 2012 agreement whereby Tim Krueger purchased William O. Krueger's stock in the company; and

    b. The February 15, 2013 purchase agreement between Krueger Cattle and the Company, whereby Tim Krueger caused the Company to sell all of its livestock to his own separate company, Krueger Cattle.

SL 1631999.1

45. The minutes for the November 19, 2013 meeting also state that "Dennis P Krueger is requesting that Timothy A Krueger purchase his Wm. O. Krueger, Inc. stock shares. Both parties are working on an agreement and a contract to purchase the stock of Dennis P Krueger."

46. In or about April 2014, Tim Krueger purchased all of Dennis Krueger's stock in the Company. On information and belief, there is no written agreement memorializing the terms of this sale. Tim Krueger has described the transaction as a "fire sale," in which Tim Krueger was able to obtain his brother's Company stock at a steep discount, of 75% or more, because Dennis Krueger was reportedly under severe financial distress due to then-pending personal legal troubles.

47. The purported purchase by Tim Krueger of all of Dennis Krueger's stock in the Company was done without calling a special meeting of the voting shareholders, without affording Plaintiffs their rights of first refusal, and without otherwise complying with the requirements of Article V of the Bylaws.

48. In a series of transactions beginning in December 2008 and continuing through at least January 2014, Mary Lou Carollo has purportedly transferred several hundred shares of Company stock to Tim Krueger, on terms unknown to Plaintiffs.

49. The transactions by which Mary Lou Carollo purportedly transferred some of her stock in the Company to Tim Krueger were done without calling a special meeting of the voting shareholders, without affording Plaintiffs or any other shareholder with their rights of first refusal, or otherwise complying with the requirements of Article V of the Bylaws.

50. The net effect of Tim Krueger's improper, self-interested machinations has been that, since at least January 2014, he controls a majority of the Company's outstanding stock.

51. On information and belief, Tim Krueger has misappropriated certain real and personal property belonging to the Company for his own personal benefit and/or wasted the Company's assets in other ways.

52. Tim Krueger and his wife, Tammy Krueger, have been treating the Company as their alter ego. Tim and Tammy Krueger have signed loan documents purportedly on behalf of the Company, despite the fact that Tammy is not a shareholder, officer or director of the Company. On information and belief, Tim and Tammy Krueger have used and disposed of Company assets as their own and for their own secret profit, and have otherwise wasted and misapplied Company assets.

53. Plaintiffs have been denied information about the Company's affairs and denied access to Company records that would enable them to more specifically set forth the details of Tim Krueger's self-dealing, waste and misconduct towards the Company.

54. From the limited information available to Plaintiffs, it appears that a property valued at over $400,000 has disappeared from the Company's books, without a corresponding asset reflecting the value received for said property.

## REQUESTS FOR INFORMATION

55. On June 25, 2014, Plaintiffs made a written request for access to the Company's books and records.

56. Plaintiffs were not granted the requested access.

57. On or about July 2, 2014, Tim Krueger's attorney provided limited documentation, including two financial statements, for 2010 and 2012, three loan documents, and minutes of two Company meetings, but otherwise claimed that no other Company records existed, including any corporate record book.

58. In July 2014, through his attorney, Tim Krueger repeatedly represented to Plaintiffs that no corporate record book existed.

59. By letter dated July 7, 2014, Tim Krueger's attorney provided copies of the Company's 2011 and 2012 tax returns.

60. By letter dated July 7, 2014, Plaintiffs requested additional documents and information concerning the Company, including additional information regarding the terms of the transactions concerning stock and Company assets set forth above, and again requested access to the Company's books and records.

61. Plaintiffs were not granted the requested access.

62. On or about July 25, 2014, Tim Krueger's attorney provided a copy of a financial statement dated January 25, 2014, and a settlement statement for the November 30, 2012 sale of a Company property by Tim Krueger.

63. On August 4, 2014, Plaintiffs again requested full access to the Company's records and books.

64. Plaintiffs were not granted the requested access.

65. On or about August 8, 2014, Tim Krueger's attorney provided the Executor of Glenda's Estate with a copy, from the Company's corporate record book, of the original stock certificate for Glenda's shares.

66. Thereafter, Tim Krueger confirmed, through his attorney, that, contrary to repeated prior misrepresentations, the corporate record book did exist and was in his possession, custody and control.

67. On or about August 13, 2014, Tim Krueger's attorney provided Plaintiffs with authorizations to obtain limited financial information from the Company's accountants and bank.

68. By letter dated August 26, 2014, Plaintiffs requested information from the Company's accountants.

69. Plaintiffs received original stock certificates evidencing the bequeath of Glenda's stock to them, in December 2014.

70. By letter dated May 26, 2015, Plaintiffs requested that Tim Krueger provide them with copies of documents relating to the transfer of shares in the Company, documents relating to the sale, lease or disposition of Company property, and documents relating to business dealings or transactions between the Company and Tim Krueger, or any entity in which he has an interest.

71. Tim Krueger did not respond to the May 26, 2015 letter.

72. By letter dated June 23, 2015, Plaintiffs demanded that the Directors of the Company:

   a. allow complete access to all records and books of the Company;

   b. provide the documents requested in the May 26, 2015 letter and earlier requests;

   c. remove Tim Krueger from his positions with the Company for mismanagement of assets and self-dealing in violation of the Bylaws and his fiduciary duties to the Company; and

   d. initiate suit on behalf of the Company against Tim Krueger, Tammy Krueger, and Krueger Cattle; to recover damages for Tim Krueger's malfeasance, self-dealing and breaches of fiduciary duties to the Company.

73. Plaintiffs received no response to the June 23, 2015 letter, and none of Plaintiffs' demands have been met.

74. Plaintiffs have never received any notices – of any Company meeting or otherwise – from Tim Krueger or the Company.

## COUNT I: ACTION FOR EQUITABLE ACCOUNTING

75. Plaintiffs incorporate the allegations of paragraphs 1 through 75 of this Complaint as set forth fully in this Count.

76. As shareholders, Plaintiffs have the right to access the books and records of the Company.

SL 1631999.1

77. There is a fiduciary relationship between Plaintiffs and Tim Krueger, in that the officers and directors of a company owe its shareholders duties of loyalty and care.

78. The Company's accounts and transactions at issue are complicated.

79. At all relevant times, Tim Krueger has been in control of the Company's books and records, and has managed the business of the Company.

80. It is Tim Krueger's duty to account for the Company's revenues and the disposition of its assets and liabilities.

81. Plaintiffs lack an adequate legal remedy for Defendants' failure to provide them with access to the Company's books and records.

WHEREFORE, Plaintiffs respectfully request this honorable Court grant judgment to Plaintiffs on this Count and Order that Plaintiffs be granted full access to all records and books of the Company, and for an equitable accounting of the assets and liabilities of the Company, and of all transactions affecting or involving the Company from 2008 to present, for the appointment of a receiver to take control of the Company to accomplish the accounting and protect the assets of the Company pending the outcome of this matter, and for all such other relief as the Court deems just and proper under the circumstances.

## COUNT II: DERIVATIVE ACTION FOR DAMAGES FOR BREACH OF FIDUCIARY DUTY – TIM KRUEGER

82. Plaintiffs incorporate the allegations of paragraphs 1 through 82 of this Complaint as set forth fully in this Count.

83. Tim Krueger owes the Company and its shareholders fiduciary duties of loyalty and care.

84. Tim Krueger breached his fiduciary duties to the Company by engaging in self-interested transactions concerning the transfer of Company stock and the transfer, lease and disposition of Company assets.

85. Tim Krueger's breaches have caused harm to the Company and shareholders by depriving the Company of value for its assets.

86. As a direct result of Tim Krueger's breaches of fiduciary duty, the Company has suffered, and will continue to suffer, damages.

WHEREFORE, Plaintiffs respectfully request that this honorable Court grant them judgment against Tim Krueger on this Count for breach of fiduciary duty, and award the Company damages in an amount to be determined at trial, and for all such other relief as the Court deems just and proper under the circumstances.

## COUNT III: ACTION FOR REMOVAL OF DIRECTOR – TIM KRUEGER

87. Plaintiffs incorporate the allegations of paragraphs 1 through 87 of this Complaint as set forth fully in this Count.

88. Plaintiffs hold approximately 12.6% of the Company's shares.

89. Tim Krueger engaged in fraudulent and dishonest conduct, gross abuse of authority or discretion with respect to the Company.

90. Tim Krueger's conduct is outside the lawful exercise of business judgment.

91. The removal of Tim Krueger as director is in the best interests of the Company.

92. Tim Krueger's continued control of the Company poses a risk of irreparable harm to the Company and its shareholders.

WHEREFORE, Plaintiffs respectfully request this honorable Court enter its Judgment removing Tim Krueger as a Director and officer of the Company, and that the Court issue temporary and preliminary injunctive relief, and appoint a receiver to replace Tim Krueger as President and

SL 1631999.1

Director of the Company, and to take hold of and administer the assets of the Company, pending this Court's final judgment, and for all such other relief as the Court deems just and proper under the circumstances.

## COUNT IV: ACTION FOR DECLARATORY AND INJUNCTIVE RELIEF – TO RESCIND AND SET ASIDE INVALID STOCK TRANSFERS – TIM KRUEGER, TAMMY KRUEGER, KRUEGER CATTLE

93. Plaintiffs incorporate the allegations of paragraphs 1 through 93 of this Complaint as set forth fully in this Count.

94. The purported transfers of Company stock from William O. Krueger, Dennis Krueger, and Mary Lou Carollo to Tim Krueger, Tammy Krueger and Krueger Cattle, and of Kerry Krueger to the Company, all were done without following the procedures for such transfers required by the Bylaws, and as such, were and are void.

95. The purported transfers deprived other shareholders of their rights under the Bylaws.

WHEREFORE, Plaintiffs respectfully request this honorable Court to enter its judgment declaring that the stock transfers were and are invalid and void, are rescinded and set aside, and for all such other relief as the Court deems just and proper under the circumstances.

## COUNT V: ACTION FOR INVOLUNTARY DISSOLUTION

96. Plaintiffs incorporate the allegations of paragraphs 1 through 96 of this Complaint as set forth fully in this Count.

97. Tim Krueger has acted in a manner that is oppressive, illegal and fraudulent with respect to the Company.

98. Company assets have been misapplied and wasted.

99. Dissolution of the Company is in the best interests of the shareholders.

WHEREFORE, Plaintiffs respectfully request that this honorable Court enter its judgment dissolving the Company, appointing a receiver to take hold of, administer, wind up and distribute to

the shareholders, all of the Company's assets, and for all such other relief as the Court deems just and proper under the circumstances.

        LUTHERAN CHURCH-MISSOURI SYNOD and
INTERNATIONAL LUTHERAN LAYMEN'S
LEAGUE a/k/a LUTHERAN HOUR
MINISTRIES, Plaintiffs

By: s/ Joshua C. Dickinson
    Joshua C. Dickinson, Bar Number 23700
    Shilee T. Mullin, Bar Number 22286
    Attorneys for Plaintiff
    Spencer Fane LLP
    12925 West Dodge Road, Suite 107
    Omaha, NE 68154
    Telephone: (402) 965-8600
    Fax: (402) 965-8601
    E-mail: jdickinson@spencerfane.com
           smullin@spencerfane.com

    Erik O. Solverud *(to be admitted pro hac vice)*
    Thomas W. Hayde, Jr. *(to be admitted pro hac vice)*
    Spencer Fane LLP
    1 N. Brentwood Blvd., Suite 1000
    St. Louis, MO 63105
    Telephone: (314) 863-7733
    Fax: (314) 862-4656
    E-mail: esolverud@spencerfane.com
           thayde@spencerfane.com